UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Elizabeth Cram and John Cram

        v.                          Civil No. 18-cv-394-LM
                                    Opinion No. 2019 DNH 142
Burger King Corporation, et al.


**O R D E R**

        Elizabeth Cram tripped and fell while at a Burger King
restaurant in Claremont, New Hampshire.  She and her husband
John Cram sued defendants, Burger King Corporation ("Burger
King"), the lessor of the Burger King restaurant where Elizabeth
was injured, Northeast Foods, LLC d/b/a Northeast Fast Foods
("Northeast Foods"), the lessee of the restaurant, and Shoukat
Dhanani, the managing member of Northeast Foods, alleging claims
sounding in negligence and seeking damages arising out of
Elizabeth's fall.[1]  Burger King and Dhanani move for summary
judgment on all plaintiffs' claims against them.[2]  Doc. no. 19.
Plaintiffs object.  Plaintiffs also move for an order compelling
Dhanani to appear for a deposition in New Hampshire or

_____

        [1] Plaintiffs also sued Houston Foods, Inc., but later
voluntarily dismissed that defendant pursuant to Federal Rule of
Civil Procedure 41(a)(1).  Doc. no. 10.

        [2] Northeast Foods does not join in Burger King and Dhanani's
motion.  For ease of reference, the court refers to Burger King
and Dhanani collectively as "defendants."

Massachusetts.  Doc. no. 30.  For the following reasons, the
court grants defendants' motion for summary judgment and denies
plaintiffs' motion to compel without prejudice.[3]

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that
there is no genuine dispute as to any material fact and [that
it] is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  In reviewing the record, the court construes all
facts and reasonable inferences in the light most favorable to
the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108,
115 (1st Cir. 2013).

## BACKGROUND

The following facts are drawn from the summary judgment
record and are construed in the light most favorable to
plaintiffs.  In January 2018, plaintiffs ate at the Burger King
restaurant in Claremont, New Hampshire.  After eating, Elizabeth
intended to use the women's restroom.  As Elizabeth opened the
door to the restroom, her right foot got caught in the rungs of
a child's highchair that had been improperly placed next to the

---

[3] Defendants requested a hearing on their summary judgment
motion.  Upon review of the relevant pleadings, the court is not
convinced that oral argument would "provide assistance to the
court." LR 7.1(d).

entrance door to the restroom.  When Elizabeth's foot got caught, she took an overextended step with her left leg to prevent herself from falling on the floor.  As she stepped with her left leg, she felt pain in that leg and fell against the bathroom wall.

Immobilized, Elizabeth waited until her husband, John, came looking for her in the women's restroom.  After being helped up by John, Elizabeth completed an incident report with the onsite restaurant manager.  Shortly thereafter, Elizabeth sought medical care at Valley Regional Hospital in Claremont.  She was diagnosed with a "nearly full tear" of her left Achilles tendon. Doc. no. 21-1 at 3.

The Burger King restaurant where Elizabeth's injury occurred is located at 324 Washington Street in Claremont, New Hampshire ("the subject restaurant").  At all times relevant to this suit, Burger King owned the subject restaurant and the land upon which it sits.  Burger King is a corporation engaged in the business of operating and granting franchises of Burger King restaurants.

At all times relevant to this suit, Burger King leased the subject restaurant to Northeast Foods, which operated the subject restaurant as Burger King's franchisee.  Northeast Foods is a limited liability company formed for the purpose of operating franchised Burger King restaurants.  It is the

franchisee of numerous Burger King restaurants throughout New England.  Dhanani is the managing member of Northeast Foods.

Northeast Foods's relationship with Burger King is governed by the lease and the Franchise Agreement, both of which Dhanani signed on Northeast Foods's behalf.  Doc. nos. 19-9, 19-10.[4] Under the lease, Northeast Foods agreed to be responsible for maintaining the subject restaurant "in good order and condition" and making all necessary repairs and using all reasonable precaution "to prevent waste, damage or injury."  Doc. no. 19-10 at 15.  The lease also states that Burger King is not liable "for any . . . injury occurring on the Premises" and that Northeast Foods would indemnify Burger King from liabilities and lawsuits arising out of the condition, maintenance, or repair of the premises, and any injury occurring on the premises.  Id. at 14, 23.

The Franchise Agreement provides Northeast Foods the right to operate the subject restaurant in exchange for the payment of royalties to Burger King.  The Franchise Agreement makes clear that Northeast Foods as franchisee is "an independent contractor

---

[4] The parties separately move to seal the copies of the lease and the Franchise Agreement submitted with their summary judgment pleadings.  As more fully explained in the order on the motions to seal, issued this same day, the court denies that request to the extent portions of the lease and the Franchise Agreement are quoted and referred to in public documents—in the parties' pleadings and in this order.  The motion to seal is otherwise granted.

and is not an agent, partner, joint venture, joint employer, or employee of [Burger King], and no fiduciary relationship between the parties exists." Doc. no. 19-9 at 9. As such, Northeast Foods is responsible for hiring and training its own employees, purchasing insurance, and maintaining and repairing the subject restaurant. In the Franchise Agreement, Northeast Foods also promised to indemnify Burger King from any losses or liabilities arising out of possession and operation of the subject restaurant, including claims of injury. Id. at 10.

Despite Northeast Foods's status as an independent contractor, the Franchise Agreement requires it, as franchisee, to comply with certain standards and policies to ensure uniformity of operation among Burger King restaurants. To ensure compliance with these standards, Burger King maintains the right to enter and inspect the subject restaurant. Burger King also retains the right to terminate the Franchise Agreement if Northeast Foods engages in conduct constituting a "default," including failing to comply with any terms of the Franchise Agreement or any other agreement between the parties regarding the subject restaurant. Doc. no. 21-8 at 7.

In May 2018, following Elizabeth's fall, plaintiffs brought this suit, asserting claims of negligence against all defendants, negligence under a theory of vicarious liability

against Burger King, and loss of consortium against all
defendants.

**DISCUSSION**

Burger King and Dhanani move for summary judgment on all
plaintiffs' claims asserted against them.  Northeast Foods does
not join in the motion for summary judgment, and has not, at
this time, moved for summary judgment.  The court addresses the
claims alleged against Burger King and Dhanani below.

I.   Claims against Burger King

Plaintiffs assert three claims against Burger King: (A)
negligence; (B) vicarious liability for the negligent conduct of
its agents; and (C) loss of consortium.  The court addresses
each in turn.

A. Negligence

To prevail on a negligence claim, a plaintiff "must show:
(1) the defendants owed [her] a duty; (2) the defendants
breached this duty; and (3) the breach proximately caused [her]
injuries." Macie v. Helms, 156 N.H. 222, 224 (2007).
Defendants argue that Burger King, as the franchisor and owner
of the subject restaurant, did not breach any duty owed to
Elizabeth, a patron of the subject restaurant.  In response,

plaintiffs assert that Burger King owed Elizabeth, as a patron of the subject restaurant, a "non-delegable duty" to ensure that the highchairs were stored in a safe location, and that Burger King breached that duty. In other words, plaintiffs claim that Burger King—based purely on its status as the owner and lessor of the restaurant—owed Elizabeth a duty to make sure the subject restaurant was free from hazards.

New Hampshire law does not impose such an absolute duty on landowners and landlords, particularly where, as here, the premises are controlled by another entity. See Sargent v. Ross, 113 N.H. 388, 397-98 (1973); see also Lussier v. New Meditrust Co., LLC, No. CIV. 00-074-B, 2001 WL 821534, at *2-3 (D.N.H. July 10, 2001). Rather, under New Hampshire law, courts consider several factors to determine whether a landlord is liable in negligence for injuries suffered by a third party while using a leased premises. See Sargent, 113 N.H. at 398; Lussier, 2001 WL 821534, at *2-3.

Historically, New Hampshire law protected landlords from liability for injuries arising on the leased premises unless the injury resulted from: "(1) a hidden danger in the premises of which the landlord but not the tenant [was] aware, (2) premises leased for public use, (3) premises retained under the landlord's control, such as common stairways, or (4) premises negligently repaired by the landlord." Sargent, 113 N.H. at

392.  But in Sargent, the New Hampshire Supreme Court abolished
this rule protecting landlords and held that "landlords as other
persons must exercise reasonable care not to subject others to
an unreasonable risk of harm."  Id. at 397.  The Court explained
that the factors listed above "which formerly had to be
established as a prerequisite to even considering the negligence
of a landlord" are no longer a prerequisite for landlord
liability.  Id. at 398.  Instead, those same factors are now
considered in determining whether the landlord exercised
reasonable care under all the circumstances.  Id.

    Lussier provides an instructive application of these
factors.  In Lussier, one of the plaintiffs slipped and fell on
steps at a rehabilitations center.  Lussier, 2001 WL 821534, at
*1.  The plaintiffs brought suit against the defendant, who
owned the property and leased it to the rehabilitation center,
asserting negligence and loss of consortium claims.  Id.

    The district court granted the defendant's motion for
summary judgment as to the negligence claim.  Id. at *3.  The
court noted that the defendant had leased the property to the
rehabilitation center, which had "assumed the primary duty under
the lease to maintain the property in a reasonably safe
condition."  Id.  The court further found that the defendant was
not involved in the facility's maintenance, did not have "actual
notice" of the rehabilitation center's failure to maintain the

steps in a safe condition, and that the defendant relinquished possession of the facility before the problem with the steps developed.  Id.

Lussier is on all fours with this case.  Burger King leased the subject restaurant to Northeast Foods, which assumed the primary duty under the lease to maintain the subject restaurant in good order and condition and to take reasonable precaution to prevent injury.  There is no evidence in the record that Burger King was involved in the maintenance of the subject restaurant or that Burger King had any notice of Northeast Foods's placement of the highchairs.  And the allegedly negligent placement of the highchairs obviously did not occur until after Northeast Foods took control of and began operating the subject restaurant.

As in Lussier, plaintiffs here point to no facts from which a reasonable jury could infer that Burger King was negligent with regard to the placement of the highchairs.  Plaintiffs' sole argument raised in their objection—that Burger King had a "non-delegable" duty to ensure that the highchairs were properly stored—is contrary to New Hampshire law.  Therefore, defendants are entitled to summary judgment as to plaintiffs' direct negligence claim against Burger King in Count 1.

B. <u>Vicarious Liability</u>

In Count 2, plaintiffs claim that Burger King should be held vicariously liable for the negligent conduct of its agents, Northeast Foods and Dhanani, in failing to properly store the highchairs in the subject restaurant.  The court addresses plaintiffs' vicarious liability claim against Burger King separately as to each allegedly negligent agent: Northeast Foods and Dhanani.

1. <u>Northeast Foods</u>

Defendants argue that Burger King is entitled to summary judgment on the vicarious liability claim as to Northeast Foods because Burger King did not exercise control over the location and placement of highchairs in the subject restaurant.  In <u>VanDeMark v. McDonald's Corp.,</u> 153 N.H. 753 (2006), the New Hampshire Supreme Court encountered the same legal question before this court: whether a restaurant franchisor and property owner could be held vicariously liable for the alleged negligence of its franchisee and tenant.  <u>See</u> <u>id.</u> at 761-63. The plaintiff in that case, an employee of the franchisee who worked as an overnight custodian, was assaulted by intruders at the franchised McDonald's restaurant.  <u>Id.</u> at 755.  He claimed that McDonald's as the franchisor should be held vicariously

liable for its franchisee's failure to implement security measures that would have prevented his injuries.  Id. at 756.

The New Hampshire Supreme Court affirmed the grant of summary judgment to McDonald's because no agency relationship existed between McDonald's and its franchisee.  Id. at 763.  The Court reasoned that no such agency relationship existed because, under the parties' agreements, McDonald's did not retain control over the specific "instrumentality" that caused the harm: the franchisee's security policies.  Id.

Defendants argue that Burger King, like McDonald's in VanDeMark, cannot be held vicariously liable because it did not control the instrumentality that purportedly caused plaintiffs' harm—the location of the highchairs at the subject restaurant. In support, defendants cite to Dhanani's affidavit, which states that the placement of highchairs within the subject restaurant "is a matter of routine maintenance that is handled by [Northeast Foods's] onsite Managers."  Doc. no. 19-4 at 2. Defendants also note that nothing in the lease or the Franchise Agreement suggests that Burger King has any control over or input into the placement of restaurant furniture at the subject restaurant.

Plaintiffs do not respond to defendants' reliance on VanDeMark or otherwise argue that Burger King somehow controlled the placement of the highchairs.  Instead, plaintiffs point to a

case, Valenti v. NET Properties Management, Inc., 142 N.H. 633 (1998), that they assert supports the proposition that Burger King owed plaintiffs a "non-delegable duty to maintain safe premises" at the subject restaurant.

Plaintiffs are mistaken.  Valenti stands for the proposition that—where a landlord still retains possession of the premises—the landlord can be held vicariously liable for the negligence of an independent contractor over whom the landlord maintains control.  Valenti, 142 N.H. at 636.  Indeed, in Lussier, the court rejected the very same argument that plaintiffs assert here.  See Lussier, 2001 WL 821534, at *4.  As the court in Lussier explained:

> [A] lease transfers the landowner's right to possess its property to the tenant during the term of the lease.  Because a landowner loses the right to possess its property when it executes a lease, it has far less ability to oversee its tenant's maintenance activities than it does to oversee an independent contractor who is working on property within the landowner's possession.

Id.  Unlike the defendant in Valenti, Burger King did not retain possession or control of the subject restaurant.  To subject a landlord to liability for its tenant's negligence under these circumstances would, as the court in Lussier explained, "be extending the doctrine of vicarious liability in a manner contemplated by neither the New Hampshire Supreme Court nor the drafters of the Restatement (Second) of Torts.  Such an

12

extension of state common law is not an appropriate activity for a federal court." Id. In short, the rule in Valenti does not apply here.

Plaintiffs do not respond to defendants' reliance on VanDeMark or point to any evidence in the record to suggest that Burger King controlled the placement of the highchairs in the subject restaurant. Under these circumstances, even viewed in the light most favorable to plaintiffs, there is no genuine dispute of material fact over whether Burger King controlled the instrumentality that caused plaintiffs' harm. See VanDeMark, 153 N.H. at 763; see also Murphy v. Holiday Inns, Inc., 219 S.E.2d 874, 878 (Va. 1975) (granting summary judgment to franchisor on vicarious liability claim when franchisor had "no power to control daily maintenance of the premises").[5] Burger King is entitled to summary judgment on Count 2 as it relates to Burger King's relationship with Northeast Foods.

_____

[5] Although not raised by plaintiffs, the court notes that this conclusion is not undermined by the fact that Burger King retained a general right to inspect the subject restaurant and terminate the Franchise Agreement for noncompliance. See, e.g., Wendy Hong Wu v. Dunkin' Donuts, Inc., 105 F. Supp. 2d 83, 88 (E.D.N.Y. 2000)(observing that "most courts" have concluded that retaining the right to enforce uniform standards, reserving a right to reenter and inspect the premises, or having a right to terminate an agreement for failure to meet standards does not exhibit sufficient control to subject franchisors to vicarious liability) aff'd sub nom. Wu v. Dunkin' Donuts, Inc., 4 F. App'x 82 (2d Cir. 2001); Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328, 341 (Wis. 2004) (describing same as "majority approach").

2. <u>Dhanani</u>

Plaintiffs allege that Burger King is vicariously liable for Dhanani's negligent acts.  <u>See</u> doc. no. 1 at ¶ 25.  Because, as the court explains in detail <u>infra</u> at part II, Dhanani is not liable for negligence, there is no basis for finding that Burger King could be vicariously liable for his actions.  <u>See</u> <u>Restatement (Third) of Torts: Apportionment Liab.</u> § 13 (describing vicarious liability as the imputation of liability to one person "based on the tortious acts of another").  Burger King is therefore entitled to summary judgment on Count 2 in its entirety.

C. <u>Loss of Consortium</u>

Finally, plaintiffs assert a claim of loss of consortium against Burger King on John's behalf.  Because the court concludes that Burger King is entitled to summary judgment on both of plaintiffs' negligence claims against it, John cannot recover for loss of consortium.  <u>See</u> RSA 507:8-a (spouse entitled to recover damages for loss or impairment of right of consortium caused by intentional or negligent injury to spouse); <u>LaBonte v. Nat'l Gypsum Co.</u>, 110 N.H. 314, 319 (1970) (describing wife's loss of consortium claim as "separate and distinct" cause of action from husband's personal injury claim that "results . . . from the negligent injury

to her husband"), superseded by statute on other grounds as stated
in Young v. Prevue Prods., Inc., 130 N.H. 84, 86 (1987); see also
Lussier, 2001 WL 821534, at *4 n.3 (dismissing husband's loss of
consortium claim because court concluded defendant was not liable
to wife for negligence).  Burger King is therefore entitled to
summary judgment as to Count 3.


II.  Claims against Dhanani

    Plaintiffs allege two claims against Dhanani: (A)
negligence; and (B) loss of consortium.

    A. Negligence

    In Count 1, plaintiffs assert that Dhanani should be held
personally liable for his own negligent conduct in operating the
subject restaurant.  They allege that his negligent acts
include, but are not limited to, failing to "ensure that the
[subject restaurant] was regularly inspected for physical
dangers to restaurant patrons and code violations, and failing
to adequately hire, train, and supervise employees to know and
comply with all applicable codes affecting the restaurant."
Doc. no. 1 at ¶ 20.  Defendants argue that Dhanani is entitled
to summary judgment on this claim for two reasons.  First,
defendants argue that there is no evidence demonstrating that
Dhanani personally engaged in tortious conduct.  Second, they

argue that Dhanani cannot be held personally liable for any alleged negligence of Northeast Foods, a limited liability company ("LLC"), simply because he entered into the Franchise Agreement on Northeast Foods's behalf.

Under New Hampshire law, "a member of an LLC generally is not liable for torts committed by, or contractual obligations acquired by, the LLC." Mbahaba v. Morgan, 163 N.H. 561, 566 (2012). RSA 304-C:23, which governs the liability of an LLC's members and managers to third parties, states that, except as elsewhere provided:

> (a) The debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the limited liability company; and

> (b) No member or manager of a limited liability company shall be obligated personally for any such debt, obligation, or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

RSA 304-C:23, I. This statute protects LLC members and managers from being held vicariously liable for the LLC's debts, obligations, or liabilities. See Mbahaba, 163 N.H. at 565. Thus, when a manager or member of an LLC acts within his authority to bind the LLC in making a contract, he is protected from personal liability for breach of that contract. Id.; see id. at 566 ("LLC members and managers who disclose that they are

contracting on an LLC's behalf are not liable for a breach because they are not parties to the contract—only the LLC itself is.").

RSA 304-C:23 does not, however, always protect an LLC manager or member from personal liability. See id. at 565. If a manager or member "commits or participates in the commission of a tort, whether or not he acts on behalf of his LLC, he is liable to third persons injured thereby." Id. Thus, RSA 304-C:23 allows for personal liability of LLC managers or members "if that liability is not based simply on the member's affiliation with the company." Id. (internal quotation marks omitted); see also 17 Outlets, LLC v. Healthy Food Corp., No. 15-CV-101-JD, 2016 WL 1273925, at *3 (D.N.H. Mar. 30, 2016) (holding that LLC manager could be held personally liable for fraud if he intentionally made material misrepresentations to induce plaintiff to sign lease agreement with LLC).

### 1. Dhanani's personal involvement

In the complaint, plaintiffs allege that Dhanani is personally liable because he failed to make sure that the highchairs were stored in a safe location. Dhanani argues that there is no evidence that he personally participated in the alleged negligent placement of the highchairs and that, therefore, he was not negligent. The New Hampshire Supreme

Court has recognized that a tort duty may arise if, under the circumstances, a reasonable person would exercise a certain degree of care for the protection of the plaintiff.  See Mbahaba, 163 N.H. at 567.  For example, in a tort case brought against the owner of a property management LLC, the New Hampshire Supreme Court held that the owner could be personally liable for harm to the tenant from lead paint where the owner personally managed the property and had actual knowledge of the presence of lead paint.  See id. at 567-68.

Here, there is uncontradicted evidence in the record that Dhanani is not personally involved in the day-to-day operation of the subject restaurant and that decisions regarding where to store highchairs are made at other levels of management. Indeed, the evidence shows that Northeast Foods hires other employees who directly manage the day-to-day operations of the subject restaurant.

Dhanani submitted a sworn affidavit that prior to Elizabeth's injury he "had no personal knowledge of the location of highchairs within" the subject restaurant.  Doc. no. 19-4 at 2.  In his answers to interrogatories, Dhanani stated that, to his knowledge, all inspections were conducted according to the relevant guidelines.  This evidence supports Dhanani's argument that he had no personal control of or knowledge about the placement of the highchairs.

Plaintiffs do not identify any evidence to the contrary. They do not cite any evidence in the record that could give rise to the inference that Dhanani participated in the placement of the highchairs, had knowledge of their location, or otherwise contributed to plaintiffs' injury.  In fact, plaintiffs appear to concede that Dhanani had no knowledge of the day-to-day operations of the subject restaurant.  See doc. nos. 21 at 8, 22 at 1 (noting that defendants' motion "admits that [Dhanani] has no knowledge of the day-to-day operations of the restaurant"). Under these circumstances, even viewing the evidence in the light most favorable to plaintiffs, there is no genuine dispute of material fact bearing on Dhanani's personal liability.

Plaintiffs attempt to use the uncontroverted record evidence showing that Dhanani had no knowledge of day-to-day operations of the subject restaurant as a sword, arguing that this fact demonstrates negligent dereliction of his personal obligations under the Franchise Agreement.  This argument is flawed in several respects.  First, Dhanani did not sign the Franchise Agreement in his individual capacity; he signed it on Northeast Foods's behalf.  See Mbahaba, 163 N.H. at 566. Therefore, he did not incur any personal obligations under the Franchise Agreement that could give rise to a duty to plaintiffs.

Second, Dhanani's distance from day-to-day operations is consistent with the terms of the Franchise Agreement. The Franchise Agreement requires Northeast Foods to employ a "Restaurant Manager" who "is responsible for the direct, personal supervision of the" subject restaurant. Id. Consistent with this language, Northeast Foods employs an "onsite Manager responsible for day-to-day operation of the restaurant, including interior and exterior maintenance of the building and grounds." Doc. no. 19-4 at 2.[6] Thus, Dhanani's lack of day-to-day involvement at the subject restaurant does not show that he failed to fulfill his "personal obligations" under the Franchise Agreement, but, rather, supports the conclusion that he had no personal knowledge of, or involvement with, the condition that gave rise to plaintiffs' injury such that he should be held personally liable.

In sum, the summary judgment record is devoid of evidence showing that Dhanani should be held personally liable, such as evidence that he had personal knowledge of a dangerous condition

---

[6] The Franchise Agreement requires that Northeast Foods empower the Managing Director (Dhanani) with "the authority to direct any action necessary" to ensure that day-to-day operations comply with the parties' agreements. Doc. no. 21-8 at 5 (emphasis added). This provision ensures Dhanani would have the power to oversee operations when necessary. This provision does not mean that Dhanani is responsible for directing and controlling day-to-day operations.

or lax maintenance practices at the subject restaurant, or that he personally managed the property such that he should have known of the purportedly dangerous condition.  Cf. Mbahaba, 163 N.H. at 567-68.


## 2. Franchise Agreement

Plaintiffs' second theory in favor of Dhanani's personal liability relies on the language of the Franchise Agreement. Specifically, plaintiffs argue that Dhanani is personally liable based on his failure to "fulfill his contractual duty to Burger King," which resulted in the presence of a hazardous condition at the subject restaurant.

The court is not convinced.  As explained above, Dhanani did not sign the Franchise Agreement in his individual capacity, but on behalf of the LLC.  See Mbahaba, 163 N.H. at 566.  The Franchise Agreement, therefore, did not give rise to any personal obligations on his part.  Even assuming for the sake of argument that Dhanani did incur personal obligations to Burger King by signing the Franchise Agreement, plaintiffs' argument still falls short.  Plaintiffs fail to explain how Dhanani's alleged breach of contractual obligations to a third party

them.  Dhanani is therefore entitled to summary judgment on Count 1.[7]


B. Loss of Consortium

Plaintiffs assert a claim of loss of consortium against Dhanani on John's behalf.  Given the court's conclusion that Dhanani is entitled to summary judgment on plaintiffs' negligence claim, John cannot recover for loss of consortium. See RSA 507:8-a; LaBonte, 110 N.H. at 319 (describing wife's loss of consortium claim as "separate and distinct" cause of action from husband's personal injury claim that "results . . . from the negligent injury to her husband"); see also Lussier, 2001 WL 821534, at *4 n.3 (dismissing husband's loss of consortium claim because court concluded defendant was not liable to wife for negligence).  Accordingly, Dhanani is entitled to summary judgment on Count 3.

---

[7] The court notes that although plaintiffs have filed a motion to compel Dhanani to appear for a deposition, they have not argued that certain facts are unavailable to them and therefore they "cannot present facts essential to justify [their] opposition" to defendants' summary judgment motion. Fed. R. Civ. P. 56(d) (stating that a nonmovant may show by affidavit or declaration that it needs additional discovery to respond properly to a summary judgment motion).  On the contrary, as discussed above, plaintiffs argue that Dhanani was not involved in the subject restaurant's day-to-day operations and attempt to use that fact in their favor.

In sum, the court grants Burger King and Dhanani's motion
for summary judgment on all claims asserted against them.  The
only claims remaining in this suit are plaintiffs' claims
against Northeast Foods.

III. <u>Motion to Compel Deposition</u>

Finally, the court addresses plaintiffs' pending motion to
compel Dhanani to be subject to deposition in New Hampshire or
Massachusetts.  Doc. no. 30.  Plaintiffs' and defendants'
briefing on this issue focuses largely on the location of
Dhanani's deposition: plaintiffs seek to depose Dhanani in New
Hampshire or Massachusetts, while defendants seek to have
Dhanani's deposition taken in Texas, where he resides and works.[8]

Plaintiffs assert that Dhanani should be compelled to
appear for deposition in New Hampshire or Massachusetts because
it is "well settled" that the deposition of a corporation by its
agents and officers should ordinarily be taken at its principal
place of business.  This rule, <u>see</u> 8A Wright & Miller, Federal
Practice and Procedure § 2112, is inapposite here.  Plaintiffs'
motion to compel does not seek to depose Northeast Foods, the

---

[8] Defendants also state in their objection that Dhanani's
deposition should be delayed until after the parties have
engaged in mediation.  The timing of Dhanani's deposition is a
matter best left to the parties to negotiate.

"corporate" entity.  And, even if it did, Northeast Foods would be entitled to designate one or more officers to testify on its behalf.  See Fed. R. Civ. P. 30(b)(6).  There is no indication in the record that Northeast Foods has designated Dhanani as its Rule 30(b)(6) representative.  To the contrary, defendants aver that they are in the process of scheduling depositions of several other individuals (Stephan Gay, Roger Campbell, and George Hiou) who Northeast Foods has designated to testify on its behalf under Rule 30(b)(6).  Doc. no. 36 at 2.  Given these facts, the court construes plaintiffs' motion to compel as seeking to depose Dhanani in his individual capacity.

Regarding an individual defendant or witness, the general rule is that the person "should be deposed in the district of his residence or principal place of business."  Foley v. Loeb, No. 06-53S, 2007 WL 132003, at *1 (D.R.I. Jan. 16, 2007) (internal quotation marks omitted); Fed. R. Civ. P. 45(c)(1).  Plaintiffs offer no justification to discard this general rule.  Without more, the court sees no reason to disregard the normal presumption that Dhanani should be deposed in Texas.

Therefore, plaintiffs' motion is denied without prejudice.  To the extent plaintiffs still seek to depose Dhanani on issues that remain relevant to the case after this order, they may either do so in Texas or move for an order from this court, with

sufficient justification, compelling Dhanani to appear for a
deposition in Massachusetts or New Hampshire.

## CONCLUSION

For the foregoing reasons, the court grants Burger King and
Dhanani's motion for summary judgment (doc. no. 19).  The court
denies without prejudice plaintiffs' motion to compel (doc. no.
30).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 29, 2019

cc: Counsel of Record